**Reversed and Remanded and Opinion on Remand Opinion filed February 28, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-08-00550-CV

## ULYSSES L. ROSEMOND, Appellant

## V.

## MAHA KHALIFA AL-LAHIQ, M.D., Appellee

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2007-63425**

# OPINION ON REMAND

In a health care liability case, the plaintiff appeals an order in which the trial court sustained the defendant doctor's objections to the sufficiency of the plaintiff's expert report, denied the plaintiff's request for a thirty-day extension to cure the deficient expert report, and dismissed with prejudice the plaintiff's negligence claim against the doctor. We conclude that the trial court did not abuse its discretion in determining that the expert report was deficient but we find an abuse of discretion in the trial court's denial of the plaintiff's request for an extension to cure the deficient expert report. Accordingly, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Ulysses L. Rosemond filed health care liability claims against a hospital and appellee physician Maha Khalifa Al-Lahiq. Rosemond later nonsuited his claims against the hospital. In his pleadings, Rosemond alleges that he was admitted to the hospital with severe abdominal pain on August 1, 2005, and that six weeks later he was transferred to a nursing home in a "crippled condition," which Rosemond alleges resulted from contractures that developed during his hospitalization. Rosemond alleges that contractures "are the chronic loss of joint motion due to structural changes in non-bony tissue." According to Rosemond, the primary cause of contractures is immobilization and prolonged bed rest, and every doctor knows that any patient who is immobilized for any period of time needs physical therapy to manually stretch the joints so that contractures do not develop. Rosemond claims that during his hospitalization he began to develop severe contractures all over his body and that by the time he was discharged from the hospital he could not use his hands and legs.

Rosemond alleges that during his hospitalization Dr. Al-Lahiq was Rosemond's attending physician and that Rosemond's wife informed Dr. Al-Lahiq that Rosemond's hands "were beginning to curl up in a clench, with the index finder and the thumbs of both hands standing out while the remaining fingers clenched tight." Rosemond asserts that Dr. Al-Lahiq was negligent in (1) failing to monitor Rosemond's condition, (2) failing to order appropriate physical therapy for Rosemond to prevent the onset of contractures, and (3) failing to immediately treat the contractures once they were discovered.

In an attempt to comply with section 74.351 of the Texas Civil Practice and Remedies Code,[1] entitled "Expert Report," Rosemond designated Dr. Howard Katz as an expert witness. Dr. Katz provided a written expert report and his curriculum vitae.

---

[1] Unless otherwise stated, all statutory references in this opinion are to the Texas Civil Practice and Remedies Code.

2

Rosemond's trial counsel encountered difficulties in transmitting Dr. Katz's expert report and curriculum vitae by facsimile to perfect service. But, Rosemond's trial counsel claimed to have received confirmation that the report was successfully transmitted within the statutory 120-day period set forth in section 74.351.

Dr. Al-Lahiq's trial counsel denied receiving the facsimile before the expiration of the statutory deadline. In a motion to dismiss and a supplemental motion to dismiss, Dr. Al-Lahiq sought dismissal of Rosemond's claim against her based upon Rosemond's alleged failure to serve any report or curriculum vitae on Dr. Al-Lahiq within 120 days of filing suit. In addition, Dr. Al-Lahiq objected to the sufficiency of Dr. Katz's expert report on various grounds and sought dismissal with prejudice of Rosemond's claim against Dr. Al-Lahiq under section 74.351(b). The trial court sustained Dr. Al-Lahiq's objections and dismissed with prejudice Rosemond's claim against Dr. Al-Lahiq.

On original submission this court concluded that the trial court had dismissed Rosemond's claim based upon both the objections to the sufficiency of the report and upon Dr. Al-Lahiq's assertion that Dr. Katz's report was not timely served. *See Rosemond v. Al-Lahiq*, 331 S.W.3d 775, 777–780 (Tex. App.—Houston [14th Dist.] 2009), *rev'd*, 331 S.W.3d 764 (Tex. 2011) (per curiam). This court affirmed the trial court's order based only upon the latter argument. *See id*. at 781. After granting review, the Supreme Court of Texas concluded that the trial court did not dismiss Rosemond's claim based upon Dr. Al-Lahiq's assertion that Dr. Katz's report was not timely served. *See Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 765–68 (Tex. 2011) (per curiam). Accordingly, the high court reversed and remanded the case to this court for consideration of the first two appellate issues, in which Rosemond challenges the trial court's dismissal under section 74.351(b) and the trial court's refusal to grant a thirty-day extension under section 74.351(c).

## II. STANDARD OF REVIEW

We apply an abuse-of-discretion standard when reviewing a trial court's decision regarding the adequacy of an expert report. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). We also review a trial court's determination that an expert witness is qualified under an abuse-of-discretion standard. *See Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996). Rosemond, as the expert proponent, had the burden to show that the expert was qualified. *See id.* at 151. A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Bowie Mem'l Hosp v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Although a reviewing court may not substitute its judgment for that of the trial court, the trial court has no discretion in determining what the law is or applying the law to the facts. *Id.*; *Sanjar v. Turner*, 252 S.W.3d 460, 463 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

## III. ANALYSIS

In his first issue, Rosemond challenges the trial court's dismissal of his claims against Dr. Al-Lahiq, claiming that Dr. Katz was qualified to offer an expert opinion and that Dr. Katz's expert report adequately met the requirements set forth in section 74.351. In his second issue, Rosemond argues in the alternative that the trial court abused its discretion by denying his request for a thirty-day extension to cure the deficiencies in Dr. Katz's report.

**A.      Did the trial court abuse its discretion by impliedly concluding that the plaintiff's expert was not qualified on the basis of training or experience to offer an expert opinion regarding accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition involved in this claim?**

Under his first issue, Rosemond argues that the trial court abused its discretion by impliedly concluding that Dr. Katz was not qualified on the basis of training or

4

experience to offer an expert opinion regarding accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition involved in this claim.

In a suit involving a health care liability claim against a physician, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who: (1) is practicing medicine at the time testimony was given or when the claim arose; (2) has knowledge of the accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.401(a), 74.351(r)(5)(A) (West 2011); *Pacha v. Casey*, No. 14-07-00150-CV, 2008 WL 2837560, at \*2 (Tex. App.—Houston [14th Dist.] July 22, 2008, no pet.) (mem. op.). To determine whether an expert's training or experience yields sufficient qualifications to offer an expert opinion regarding those accepted standards of medical care, we consider whether the expert (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and (2) is actively practicing medicine in rendering medical-care services relevant to the claim.[2] Tex. Civ. Prac. & Rem. Code Ann. § 74.401(c). *See Pacha*, 2008 WL 2837560, at \*2; *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 759 (Tex. App.─Houston [14th Dist.] 2007, no pet.) (reviewing the same factors with regard to a claim against a health care provider). Subject to exceptions not applicable to this case, section 74.403, entitled "Qualifications of Expert Witness on Causation in Health Care Liability Claim," requires that:

> in a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards

---

[2] The term "practicing medicine" includes, but is not limited to, training residents or students at an accredited medical school or serving as a consulting physician to other physicians who provide patient care at the request of such other physicians. Tex. Civ. Prac. & Rem. Code Ann. § 74.401(b).

of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a) (West 2011). The party offering the witness as an expert must establish that the witness is qualified to testify by demonstrating the witness has expertise concerning the actual subject matter for which the party is offering an opinion. *See Pacha*, 2008 WL 2837560, at *3. The qualifications of the expert necessary to fulfill the criteria for an expert under section 74.351 must be found within the four corners of the expert report itself and the expert's curriculum vitae. *See Palacios*, 46 S.W.3d at 878; *Pacha*, 2008 WL 2837560, at *3.

Dr. Al-Lahiq objected that Dr. Katz was not qualified on the basis of training or experience to offer an expert opinion regarding accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition involved in this claim. The trial court sustained this objection and impliedly dismissed Rosemond's claim based upon a conclusion that Dr. Katz was not qualified as argued by Dr. Al-Lahiq. In his report Dr. Katz does not address his training or experience to offer an expert opinion regarding accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition involved in this claim. In his curriculum vitae, Dr. Katz states the following:

- Dr. Katz is currently "National Medical Advisor" for NeuroRestorative Specialty Centers and "Medical Director" for Private Care Nursing Services and Private Care Assistance.
- Dr. Katz has held positions in the past as Medical Director of various health care providers.
- Dr. Katz did a "residency/internship" in Physical Medicine and Rehabilitation.
- Dr. Katz is board certified in Physical Medicine and Rehabilitation and in the subspecialty of Spinal Cord Injury Medicine.

Under section 74.401(a), Dr. Katz must be qualified on the basis of training or experience to offer an expert opinion regarding accepted standards of care for the

6

diagnosis, care, or treatment of joint contractures. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a); *Blan v. Ali*, 7 S.W.3d 741, 745–46 (Tex. App.─Houston [14th Dist.] 1999, no pet.). His curriculum vitae states that Dr. Katz is board certified in Physical Medicine and Rehabilitation and in Spinal Cord Injury Medicine. But nothing in Dr. Katz's report or curriculum vitae addresses whether these certifications are in areas of health care relevant to Rosemond's claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a),(c). Neither the report nor the curriculum vitae contains any reference to training or experience regarding joint contractures. *See id.* Nothing in these documents addresses whether, and to what extent, Dr. Katz has diagnosed, treated, or otherwise provided medical-care services regarding joint contractures. *See id.* Though it is possible that Dr. Katz's board certifications, training, and experience are relevant to the diagnosis, care, or treatment of joint contractures, we cannot determine that this is so from the four corners of the report and curriculum vitae. *See Palacios*, 46 S.W.3d at 878; *Pacha*, 2008 WL 2837560, at *3. On this record, we conclude that the trial court did not abuse its discretion by impliedly concluding that Dr. Katz was not qualified on the basis of training or experience to offer an expert opinion regarding accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition involved in this claim.[3] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a), (c); *Methodist Health Care Sys. of San Antonio, Ltd. v. Rangel*, No. 04-05-00500-CV, 2005 WL 3445994, at *2–3 (Tex. App.—San Antonio Dec. 14, 2005 pet. denied) (holding doctor was not qualified under section 74.402 where expert report failed to state how the doctor's experience on a peer review committee and as an administrative director constituted training or experience which qualified him to opine about the standard of care at issue) (mem. op.); *In re Windisch*, 138 S.W.3d 507, 513–14 & n. 11 (Tex. App.—Amarillo 2004, orig. proceeding) (holding conclusory statements referencing an expert's qualifications are

---

[3] Rosemond asserts that Dr. Katz may be qualified if Dr. Katz has practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those that confronted Dr. Al-Lahiq. But Dr. Katz did not state in his report that he had such knowledge, nor did he describe how his training or experience would provide him with such knowledge.

7

insufficient to show the expert is qualified on the particular subject matter at hand when the expert report does not bridge the gap between expert's experience and the standards of medical care at issue).

## B. Did the trial court abuse its discretion in concluding that the report of the plaintiff's expert's is deficient?

In accordance with section 74.351(l), a trial court should grant a motion challenging the adequacy of an expert report only if the report does not represent an objective, good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6). Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(l), 74.351(r)(6). Section 74.351(r)(6) defines "expert report" as:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). The trial court's inquiry is limited to the four corners of the report. *See Palacios*, 46 S.W.3d at 878; *Pacha*, 2008 WL 2837560, at *7. A good-faith effort requires that the report contain a discussion of the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *See Palacios*, 46 S.W.3d at 875; *Pacha*, 2008 WL 2837560, at *7.

The expert report can be informal in that the information in the report need not meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *See Palacios*, 46 S.W.3d at 879; *Pacha*, 2008 WL 2837560, at *7. Omission of any of the statutory elements prevents the report from being a good-faith effort. *See Palacios*, 46 S.W.3d at 879; *Pacha*, 2008 WL 2837560, at *7. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *See Palacios*, 46 S.W.3d at 879; *Pacha*, 2008 WL 2837560, at *7.

8

A fair summary sets forth what care was expected but was not given. *See Palacios*, 46 S.W.3d at 880; *Pacha*, 2008 WL 2837560, at *7. Identifying whether the standard of care has been breached cannot be determined absent specific information about what should have been done differently. *See Palacios*, 46 S.W.3d at 880; *Pacha*, 2008 WL 2837560, at *7. An expert's report must contain information on the standard of care; it is not enough for a report to contain conclusory statements about Rosemond's claim. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Pacha*, 2008 WL 2837560, at *7. Rather, the expert must explain the bases of the statements and link any conclusions to the facts. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Pacha*, 2008 WL 2837560, at *7. An expert report must show causation beyond mere conjecture. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Pacha*, 2008 WL 2837560, at *7.

Dr. Katz's report is a six-page document entitled "special report." Most of the report is a summary by Dr. Katz of some of Rosemond's medical records that Dr. Katz reviewed. In this summary Dr. Katz begins with entries on August 3, 2005, and discusses notes attributed to Dr. Hussain Ahmad. These notes indicate that Rosemond was admitted to a hospital emergency room on August 2, 2005, with abdominal pain and a fever. After Rosemond was admitted to the hospital, his condition worsened overnight and he was transferred to an intensive care unit. According to this same section of Dr. Katz's report, Rosemond was apparently evaluated by a Dr. Patel for a pulmonary consultation, a Dr. Douglas Dow for a urology consultation, and a Dr. Garza for surgical consultation.

The second section of the summary appears to address an operative report by Dr. Richard Garza, dated August 4, 2005, describing an exploratory surgery performed on Rosemond's abdomen. The next section of the summary discusses a consultation report by Dr. Douglas Dow, who, as noted by Dr. Katz, recommended a continued renal evaluation, antibiotics if necessary, and an MRI.

9

Next in his report Dr. Katz appears to summarize a note by Dr. Al-Lahiq. This section is set forth in its entirety as follows:

MAHA KI AL-LAHIQ, MD: Note dated September 7, 2005 Mr. Rosemond was awake and alert. Abdomen was soft with normal bowel sounds. The exploratory incision site was clean. The note states that it was okay to transfer Mr. Rosemond to the nursing home. It was stated that they should perform repeat blood draws, continue antibiotics.

Discharge summary dated September 7, 2005 admission diagnosis was acute abdominal pain. Discharge diagnosis was acute abdominal pain of uncertain etiology, acute peritonitis, acute renal failure, acute respiratory failure, sepsis, paralytic ileus, hematuria, multiple organ dysfunctions secondary to sepsis, anemia status post transfusion and cardiac arrhythmia. When Mr. Rosemond presented in the emergency room he was found to have renal insufficiency with bloody urine and had not had a bowel movement for four days. History of stay at Memorial Herman Health System states that Mr. Rosemond was initially started on Levaquin, intervenous [sic] hydration and N.P.P. Surgical and gastroenterological consults were obtained. Within twelve hours of admission Mr. Rosemond's condition became worse showing signs of sepsis and he became hemodynamically compromised. He was transferred to the intensive care unit and intubated. He was put on vasopressors. Critical care and surgical consults were done the next morning. Also gastroenterology and infectious disease consults were done. Due to hematuria, a urology consult was also obtained. Due to the unclear etiology of the sepsis he had an exploratory laparotomy and no definitive cause for sepsis was found. There was evidence of mild peritonitis with exudative fluid sent for pathology. The area was cleaned and he was closed. This was complicated by postoperative surgical wound infection and dehiscence that was taken care of later in the course of his hospital stay. The urologist put a stint in his urethra speculating that it may be the cause of the sepsis. There was very minimal improvement in Mr. Rosemond's condition. He continued to be septic with abdominal pain and abdominal [illegible] . . . . [Illegible] . . . and antibiotics with involvement of Dr. Ahmed of infectious diseases. Slowly but progressively his respiratory status seemed to improve to the point that he was extubated. His gastrointestinal and hemodynamic status staggered behind slowly. It was initially very difficult to begin P.O. intake due to retention, stasis and distention. Mr. Rosemond became hemodynamically stable and was taken off vasopressors. He was given several transfusions due to low hemoglobin. He was transferred to the floor

10

and put on nasogastric feeding as tolerated. He became more alert and was able to verbalize pain. He was started on rehabilitation with very slow progression but willingness on Mr. Rosemond's part to participate. When Mr. Rosemond became stable enough it was agreed to put him in a nursing home for rehabilitation and to continue his medical care. He was transferred in a fairly stable condition still not tolerating P O intake very well but was very weak and needed extensive work with rehabilitation. His renal insufficiency that started with acute sepsis and the need for hemodialysis seemed to improve to the point where Mr. Rosemond did not require further hemodialysis.

Miscellaneous Note: Physician's order (unknown physician) dated September 7, 2005 show orders for antibiotics at the nursing home, [illegible] 200 mg IV every day for a week and Diflucan 200mg P.O. every day for three weeks. LFTs every week. Finally an okay to transfer to the nursing home with current medications.

In the next section of his report, Dr. Katz appears to summarize notes from Courtyard Convalescence Center. According to Dr. Katz's summary of these notes, Rosemond was admitted to Courtyard Convalescence Center on September 7, 2005, and then transferred to a hospital emergency room on September 19, 2005. Dr. Katz next summarizes a letter dated January 17, 2008, more than two years later. In this letter, Dr. Joseph Gugenheim states that Rosemond has severe joint contractures.

In a section labeled "Assessment," Dr. Katz then states the following:

1. Ulysses Rosemond has severe multiple joint contractures with no upper motor neuron dysfunction to explain them
2. Ulysses Rosemond suffered an acute illness in August of 2005. Reportedly by September 7, 2005 he had developed contractures. This is despite no upper motor neuron dysfunction
3. Obesity, hypercholestrocemia
4. Severe peridpheral [sic] polyneuropathy

In a section entitled "Causation," Dr. Katz then notes the following:

> Despite having no upper neuron dysfunction Ulysses Rosemond developed severe multiple joint contractures. There is no documentation in the records that have been provided to me that

11

range of motion exercises were provided during this prolonged illness and hospitalization where Ulysses Rosemond was very weak and unable to move very much on his own. The standard of care when a person is that ill is to be provided range of motion exercises. Therefore based on the records that I have and no documentation that range of motion exercises were provided, the lack of range of motion exercises to a reasonable degree of medical certainty is the proximal [sic] causative problem that resulted in Mr. Ulysses Rosemond having severe contractures to this date. No range of motion exercises is a breach of standard of care (citations omitted). The standard of care is to provide range of motion exercises a minimum of one time per day in this debilitated of a patient (citations omitted). The breach in the standard of care, to a reasonable degree of medical certainty, resulted in joint contractures, impairment, and disability.

There is no reference in Dr. Katz's report to any medical care rendered by Dr. Al-Lahiq on any date other than on September 7, 2005.

To constitute a good-faith effort under section 74.351, an expert report must contain a discussion of the standard of care, breach, and causation with enough specificity to inform the defendant of the conduct called into question and to provide the trial court with a basis to determine whether the claims have merit. *See Palacios*, 46 S.W.3d at 875. Limiting our analysis to the four corners of Dr. Katz's report, we conclude that this report does not sufficiently set forth opinions as to each of the required elements in section 74.351.

Dr. Katz indicates in his report that "the standard of care when a person is that ill is to be provided range of motion exercises." But, in light of the multiple health care providers named in Dr. Katz's report and the lack of any specific reference in this statement to Dr. Al-Lahiq, Dr. Katz failed to articulate the applicable standard of care as it applies to Dr. Al-Lahiq or Dr. Al-Lahiq's field of medicine. *See Austin Heart P.A. v. Webb*, 228 S.W.3d 276, 280 (Tex. App.—Austin 2007, no pet.). To the extent that Dr. Katz opines that range-of-motion exercises should have been ordered, he does not

12

attribute that specific duty to any party in his report. Rosemond asserts that the standard applies to Dr. Al-Lahiq, because she was the only "doctor-defendant." Had Dr. Katz made reference only to Dr. Al-Lahiq's actions or omissions in his report, the link between Dr. Katz's opinions and Dr. Al-Lahiq's action or inaction might be more apparent.[4] *See id.* at 281 (rejecting similar argument regarding an expert report that was "strictly a recitation of historical material contained in the medical records" in which the patient saw other non-defendant physicians after being treated by the defendant doctor but before the condition improved). In any event, whether Dr. Al-Lahiq is the only defendant physician is outside the four corners of the report. *See Palacios*, 46 S.W.3d at 878; *Austin Heart P.A.*, 228 S.W.3d at 282. In his report, Dr. Katz does not identify the standard of care applicable to Dr. Al-Lahiq. Dr. Katz does not identify with specificity any action or inaction by Dr. Al-Lahiq that Dr. Katz believes constitutes a breach of the applicable standard of care. Dr. Katz deduces that no range-of-motion exercises were provided based upon the absence of any reference to such exercises in the medical records that Dr. Katz reviewed. Dr. Katz states that the lack of range-of-motion exercises to a reasonable degree of medical certainty caused Rosemond to have severe contractures "to this date." Dr. Katz does not specify whether "this date" means the date of Dr. Katz's report, in February 2008, or September 7, 2005, the date by which Dr. Katz states that Rosemond "reportedly" had developed joint contractures. Dr. Katz states that Rosemond "reportedly" had developed joint contractures by September 7, 2005, the only date on which Dr. Katz mentions that Dr. Al-Lahiq rendered medical care to Rosemond. In his report, Dr. Katz does not inform Dr. Al-Lahiq of the conduct that Dr. Katz is calling into question. *See Palacios*, 46 S.W.3d at 878. We cannot determine whether Dr. Al-Lahiq breached her duty to Rosemond "absent specific information about what [she] should have done differently." *See id.* at 880.

---

[4] Rosemond cites *Jorgensen v. Texas MedClinic*, 327 S.W.3d 285 (Tex. App.—San Antonio 2010, no. pet.) for support that Dr. Katz's report is not insufficient because Dr. Al-Lahiq was the only doctor sued. But that case is distinguishable because that case involved a single defendant, a defined medical procedure, and one applicable standard of care. *See Jorgensen*, 327 S.W.3d at 288.

On this record and under the applicable standard of review, we conclude the trial court did not abuse its discretion by determining that Dr. Katz's report failed to provide a fair summary of Dr. Katz's opinions regarding (1) the applicable standard of care, (2) the manner in which the care rendered by Dr. Al-Lahiq failed to meet the standard, and (3) the causal relationship between that failure and the injury, harm, or damages claimed by Rosemond.[5] *See Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 880; *Baytown Radiology Ass'n v. Carlton*, No. 14-09-00705-CV, 2010 WL 2573880, at \*3–4 (Tex. App.—Houston [14th Dist.] June 29, 2010, no pet.) (mem. op.). Accordingly, we overrule Rosemond's first issue.

## C. Did the report of the plaintiff's expert constitute no report at all so that the trial court may not grant a thirty-day extension under section 74.351(c)?

In his second issue, Rosemond argues in the alternative that the trial court abused its discretion by denying his request for a thirty-day extension to cure the deficiencies in Dr. Katz's report and to allow Dr. Katz to explain why he is qualified as an expert witness in this case. In response, Dr. Al-Lahiq asserts that Dr. Katz's report was not just a deficient report but no report at all such that no extension is allowed under section 74.351(c). *See Scoresby v. Santillan*, 346 S.W.3d 546, 557 (Tex. 2011) (concluding that a trial court may grant a thirty-day extension under section 74.351(c) if by the statutory deadline a document is served that contains the opinion of an individual with expertise that the claim has merit and if the defendant's conduct is implicated). *See also Thomas v. Torrez*, No. 14-10-00281-CV, —S.W.3d—,—, 2011 WL 1196056, at \*2–3 (Tex. App.— Houston [14th Dist.] March 31, 2011, pet. dism'd) (discussing the distinction between a deficient report and no report). The Supreme Court of Texas has recognized that the *Scoresby* standard is minimal; therefore, most purported expert reports are likely to fall into the deficient-report category and be eligible for a thirty-day extension under section 74.351(c). *See Scoresby*, 346 S.W.3d at 557–58. That Dr. Katz may lack qualifications

---

[5] As discussed above, the issue of whether Dr. Katz's report was timely served is not before this court on appeal because the trial court did not grant Dr. Al-Lahiq's motions regarding this issue.

and that the document he prepared may be inadequate is not dispositive. *See id.* at 549, 557–58. The Supreme Court of Texas has held that the trial court did not find that the document prepared by Dr. Katz was served more than 120 days after suit was filed. *See Rosemond*, 331 S.W.3d at 768. The document prepared by Dr. Katz has various deficiencies and does not show that Dr. Katz is qualified. Despite these defects, Dr. Katz does opine that range-of-motion exercises should have been provided during Rosemond's hospitalization and does mention that Dr. Al-Lahiq rendered medical care on at least one day during this period. We conclude that the document prepared by Dr. Katz contains the opinion of an individual with expertise that Rosemond's claim has merit and that this document implicates Dr. Al-Lahiq's conduct. Therefore, the trial court had discretion to grant a thirty-day extension under section 74.351(c). *See Scoresby*, 346 S.W.3d at 549, 557–58.

**D.** **Did the trial court abuse its discretion by denying the plaintiff a thirty-day extension under section 74.351(c)?**

Rosemond asserts that the trial court abused its discretion by denying his request for a thirty-day extension to cure the deficiencies in Dr. Katz's report and to allow Dr. Katz an opportunity to explain why he is qualified as an expert witness. The Supreme Court of Texas granted review in *Samlowski v. Wooten* to address the legal standard that courts should apply to decide such an issue. *See* 332 S.W.3d 404, 407 (Tex. 2011) (plurality opinion by Medina, J., joined by Jefferson, C.J. and Hecht, J.). But there were four opinions in *Samlowski* and a majority of the court did not agree on the legal standard to apply in these circumstances. *See id.* at 407, *id.* at 412–16 (Guzman, J., concurring in the judgment, joined by Lehrmann, J., and joined in part by Wainwright, J.), *id.* at 416–19 (Wainwright, J., dissenting in part and concurring in the judgment in part), *id.* at 419–25 (Johnson, J., dissenting, joined by Green and Willett, JJ.).

Though the *Samlowski* court was fractured on the key issue, binding principles emerged from the case. Five justices agreed to the general principles that the trial court should err on the side of granting an extension under section 74.351(c) and that the trial

15

court must grant such an extension if the deficiencies are curable. *See Scoresby*, 346 S.W.3d at 549; *Samlowski*, 332 S.W.3d at 411 (plurality opinion by Medina, J., joined by Jefferson, C.J. and Hecht, J.); *id.* at 416 (Guzman, J., concurring in the judgment, joined by Lehrmann, J.). Therefore, intermediate appellate courts are bound to apply these principles.

But, as noted, five justices did not agree on the legal standard by which a reviewing court should determine whether the trial court abused its discretion by denying a request for a thirty-day extension under section 74.351(c). *See id.* at 407–412 (plurality op. by Medina, J.), *id.* at 412–16 (Guzman, J., concurring in the judgment), *id.* at 416–19 (Wainwright, J., dissenting in part and concurring in the judgment in part), *id.* at 419–25 (Johnson, J., dissenting). Consequently, none of the *Samlowski* opinions are binding precedent on this court as to this issue. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *Univ. of Tex. Medical Branch at Galveston v. York*, 871 S.W.2d 175, 176–77 (Tex. 1994); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 329 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Research has not revealed, and the parties have not cited, any precedent from this court on this point.

Dr. Katz did not show in his report that he was qualified, and his report did not satisfy the requirements of section 74.351. Nonetheless, in his report Dr. Katz addressed each of the statutory elements, although he did so in a deficient manner. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (stating that the trial court may grant a thirty-day extension to cure deficiencies "[i]f an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient"). Accordingly, we conclude that the trial court abused its discretion by denying Rosemond's request for a thirty-day extension under section 74.351(c). We sustain Rosemond's second issue.

16

## IV. CONCLUSION

The trial court did not abuse its discretion by concluding that Dr. Katz was not qualified on the basis of training or experience to offer an expert opinion regarding accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim. Nor did the trial court abuse its discretion by concluding that the elements of Dr. Katz's report were deficient. But the trial court did abuse its discretion by denying Rosemond's request for a thirty-day extension under section 74.351(c). Therefore, we reverse the trial court's order and remand with instructions for the trial court to grant a thirty-day extension under section 74.351(c).


/s/    Kem Thompson Frost
Justice

Panel consists of Chief Justice Hedges and Justices Frost and McCally.