**Reversed and Remanded and Memorandum Opinion filed January 10, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00305-CV

---

**ADAIAH EZEKIEL, M.D., Appellant**

**V.**

**ADA SHORTS AND STERLING DRISDALE, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF JA'MAREAN J. SHORTS DRISDALE, DECEASED, Appellees**

---

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 11-DCV-192862**

---

## MEMORANDUM OPINION

Appellees, Ada Shorts and Sterling Drisdale, Individually and as Representatives of the Estate of Ja'Marean J. Shorts Drisdale, Deceased, sued appellant, Adaiah Ezekiel,

M.D., for medical malpractice. Dr. Ezekiel filed a motion to dismiss appellees' suit for failure to file an expert report within the 120th day of filing suit. The trial court denied Dr. Ezekiel's motion to dismiss. We reverse and remand.

## I. BACKGROUND

This medical malpractice action arises from the September 9, 2010 delivery and subsequent death of newborn Ja'marean Shorts Drisdale. Appellees, Ja'mareans parents, filed their original petition against Dr. Ezekiel and Oakbend Medical Center; appellees allege that Ja'marean's death was due to complications related to his birth and negligence of the defendants.

On January 4, 2012, appellees served the expert report of Mark J. Gottesman, M.D. January 6, 2012, was the deadline for serving an expert report on the defendants. The adequacy of Gottesman's four-page expert report—whether the report constitutes "no report" or is merely deficient—is the subject of this appeal and, therefore, this factual summary of Ada Shorts' intrapartum course of treatment tracks that report.

During the early evening hours of September 8, 2009, Shorts, who was thirty-three weeks pregnant, was admitted to Oakbend. She was admitted due to "spontaneous contractions without ruptured membranes."

The medical records reflect that, earlier in the day of her September 8 admission to Oakbend, Shorts attended a routine prenatal care visit, and the office examination shows the cervix was "1 cm dilated, thick, and posterior." Upon her admission to Oakbend that evening, Shorts was having contractions that were five to ten minutes apart. The fetal monitoring strip showed "reassuring fetal heart rate with variability." But, shortly after admission according to the records, there was a "prolonged deceleration with a short recovery followed by a second deceleration," and "Dr. Ezekial [sic], the attending physician, was notified and the patient received intravenous hydration and oxygen by face mask." Shorts also received subcutaneous terbutaline and antibiotics.

2

Throughout the night there were multiple episodes of what were described in the record as variable decelerations, several of which lasted longer than sixty seconds even in the absence of contractions according to the fetal monitor strips. Shorts received Stadol at 11:00 p.m. Her contractions appeared to have ceased, and the fetal heart rate showed no tachycardia or bradycardia. There was average variability at 3:45 a.m. on September 9. However, the variable decelerations returned at that time. Two of these were longer than sixty seconds and were profoundly deep, and there were several additional decelerations less than thirty seconds in duration.

At 5:45 a.m., the records reveal a variable deceleration lasting over one minute. At 6:40 a.m., there were two prolonged variable decelerations followed by a very prolonged deceleration lasting three minutes. Between 6:40 a.m. and 7:40 a.m., "there were several variable decelerations lasting almost three minutes with several of these showing bradycardia in the 60 to 70 beat range." A biophysical ultrasound profile was carried out, which was reported as reassuring with a score of 8/8, but the records also show an amniotic fluid index of 6.2.

"Dr. Ezekial [sic] was notified about the deceleration at 7:48 a.m., and ordered an emergency cesarean section." According to the records, Dr. Thibodeux, the surgeon, was phoned at 8:14 a.m. When Dr. Thibodeux examined Shorts at 8:18 a.m., she was "3 cm dilated with the fetus out of the pelvis." A cesarean section was ordered at 8:23 a.m., and surgery began at 8:32 a.m., under general anesthesia. Dr. Thibodeux delivered 3 pound, 9.5 ounce Ja'marean Shorts Drisdale at 8:35 a.m., "with light meconium stained fluid." APGAR scores were "0 at one minute and 3 at five minutes with aggressive resuscitation carried out," which included chest compressions and aggressive ventilation and epinephrine and bicarbonate administration. Ja'marean was transferred to the special care nursery.

In the neonatal period, Ja'marean had early onset of seizures. At 10:00 a.m., seizures involving all four extremities were noted, and he received anticonvulsant

3

medication.  Ja'marean was transferred to Memorial Hermann Children's Hospital with hypoxic ischemic encephalopathy.  This diagnosis was supported by an MRI and CT scan at Memorial Hermann.

Ja'marean died on September 9, 2010.  On September 8, 2011, appellees filed their original petition against Dr. Ezekiel and Oakbend, alleging that Ja'marean's death was due to complications related to his birth and negligence of the defendants.  On January 4, 2012, appellees served the expert report of Mark J. Gottesman, M.D.  January 6, 2012, was the deadline for serving an expert report on the defendants.  On January 26, 2012, Dr. Ezekiel filed her motion to dismiss for failure to serve an expert report within 120 days of filing suit because the expert report did not implicate Dr. Ezekiel's conduct, i.e., it did not state a standard of care, a breach of the standard of care, or a causation theory with respect to Dr. Ezekiel.

On January 10, 2012, appellees served Dr. Ezekiel with their notice of filing of a supplemental expert report.  On February 7, 2012, appellees filed their motion for a thirty-day extension of time to serve an amended or supplemental expert report, in which appellees admitted that "Dr. Gottesman's initial report, dated November 16, 2011, is insufficient as to Dr. Ezekiel," but argued that it was not "no report" because it names her and implicates her conduct.  On March 9, 2012, the trial court denied Dr. Ezekiel's motion to dismiss without stating the reasons for its ruling.  The trial court never ruled on appellees' motion for a thirty-day extension of time.  Dr. Ezekiel appeals the trial court's denial of her motion to dismiss.[1]

---

[1] Dr. Gottesman's report addressed the care rendered by Oakbend's nursing staff.  Appellees also served the expert reports of Kristin Thorp, RNC and Barbara Camune, RNC, which discuss the care rendered by the nursing staff.  The record on appeal does not reflect that Oakbend challenged the expert reports or otherwise moved to dismiss appellees' claims against it.  Oakbend is not a party to this appeal.

Dr. Ezekiel argues that neither Thorp nor Camune is qualified to discuss the standard of care or breach with regard to a physician.  Appellees, however, do not assert that the reports by Thorp and Camune are directed toward Dr. Ezekiel.

## II. ANALYSIS

In her only issue in this appeal, Dr. Ezekiel contends that the trial court erred by failing to dismiss the claims against her because appellees did not file and serve an expert report that addressed the care of Dr. Ezekiel within 120 days of filing suit. Therefore, Dr. Ezekiel complains that Dr. Gottesman's report constitutes "no report" as to her because it does not identify the standard of care, breach, or causation with respect to the care she rendered. Appellees contend that the expert report is merely a deficient report, and they are entitled to a thirty-day extension in which to file a supplemental report.

Section 74.351(r)(6) of the Medical Liability Act[2] defines an expert report as a written report by an expert that provides a "fair summary" of the expert's opinions regarding the applicable standard of care, the manner in which standard of care was breached, and the causal relationship between the breach and the claimed damages. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). The expert report must provide information sufficient to inform the defendant of the specific conduct the plaintiff has called into question, and provide a basis for the court to conclude that the claims have merit. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).

Section 74.351(a) provides that the plaintiff must serve its expert reports on each party or party's attorney "not later than the 120th day after the original petition was filed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). "Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *Id.* The Act distinguishes between missing a deadline altogether and serving an inadequate report. *Scoresby v. Santillan*, 346 S.W.3d 546, 553 (Tex. 2011). Under section 74.351(b), if a defendant has not been served with an expert report within 120 days of the filing of the suit, the court must, on the defendant's motion, dismiss the plaintiff's claim against the defendant with prejudice

---

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–74.507 (West 2011 & Supp. 2012).

and award the defendant reasonable attorney's fees and costs. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). Section 74.351(l) states that the court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort" to comply with the Act's requirements. *Id.* § 74.531(l). However, before granting such a motion under section 74.531(l), the Act provides the plaintiff a thirty-day period "to cure deficiencies before the trial court finally determines that the report is inadequate and the claim must be dismissed." *Scoresby*, 346 S.W.3d at 556; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) ("If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency.").

In *Scoresby*, the Texas Supreme Court addressed the minimum standard an expert report must meet. *See* 346 S.W.3d at 549. The Act contemplates that a document can be considered an expert report despite its deficiencies; however, the Act does not suggest that a document utterly devoid of substantive content will qualify as an expert report. *Id.* Instead, "a document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." *Id.* Thus, a thirty-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, contains the opinion of an individual with expertise that the claim has merit, and implicates the defendant's conduct. *Id.* at 557. If a report does not meet the standard set forth in *Scoresby*, it is not an expert report under the Act, and the trial court must dismiss the plaintiff's claims if the defendant properly moved for dismissal. *Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012).

As admitted by appellees, Dr. Gottesman's report is deficient as to Dr. Ezekiel. The expert's report must address all the elements of the claim, i.e., standard of care, breach, and causation, and omissions may not be supplied by inference. *Scoresby*, 346 S.W.3d at 556. Dr. Gottesman's report fails to do this with regard to Dr. Ezekiel.

6

However, the standard for determining whether a plaintiff is entitled to a thirty-day extension to cure the deficiencies is "minimal." *Id.* at 557. Dr. Ezekiel does not challenge the first two *Scoresby* elements—that the report was served by the statutory deadline or that it contains the opinion of an individual with expertise that the claim has merit—but only that it does not implicate her conduct.

In his report, Dr. Gottesman states that he has "reviewed medical records pertaining to the obstetrical care of Ada Shorts involving the delivery of her infant son, Ja'marean Shorts Drisdale." Dr. Gottesman then describes his medical training and experience in obstetrics and gynecology, and states that he is "familiar with the standards of care that should be rendered to a patient in labor[,]" including "the level of medical care that would be rendered *by a physician taking care of a patient in labor*, as well as the duties of a labor and delivery nurse providing care to such a patient."[3] Notably, Dr. Ezekiel, the pre-delivery attending physician, is the only physician appellees sued for medical malpractice. Dr. Thibodeux, the delivering physician, is not a defendant. Gottesman's report makes clear that his criticisms of care pertain to a time before Dr. Thibodeaux "was phoned" at 8:14 a.m. on September 9.

As a basis for his opinion that "an unwarranted delay in the expeditious delivery of Ja'marean Drisdale" fell below the standard of care, Dr. Gottesman outlines failures in the assessment of Shorts's condition and in communications between Dr. Ezekiel and the labor and delivery nurses. Thus Dr. Gottesman opines that, based on the course of Shorts's labor and the objective evidence available, "Ja'marean Shorts should have been delivered in the period between 6:45 and 7:45 a.m." Dr. Gottesman states that "variable decelerations lasting almost three minutes in length with several of these showing bradycardia in the 60 to 70 beat range" was information that should have been provided to Dr. Ezekiel. Dr. Gottesman also notes, for example, that although the biophysical assessment was "reassuring with a score of 8/8," that assessment was incorrect in light of

---

[3] Emphasis added.

the amniotic fluid index of 6.2. Ultimately, Dr. Gottesman opined: "If the nurses failed to communicate to Dr. Ezekial [sic] the worsening fetal heart rate tracing pattern, that was a breach in the standard of care. If such communication was made to Dr. Ezekial [sic], and *an ultrasound was nonetheless ordered*, it would have been incumbent upon the bedside nurses to initiate the chain of command and request another caregiver come to immediately assess Ms. Shorts and her fetus."[4] Dr. Gottesman thus states these criticisms in the alternative. It is true that Dr. Gottesman's remark does not, in active voice, state "Dr. Ezekiel nonetheless ordered an ultrasound." However, Dr. Gottesman's report leaves no doubt that his opinion is:

- ordering an ultrasound instead of an emergency delivery fell below the standard of care in this case; and

- nurses, acting within the proper standard of care, should have gotten another doctor if they communicated pertinent information to Dr. Ezekiel and she nonetheless ordered an ultrasound.

As previously stated, the parties agree that Dr. Gottesman's report is insufficient, but dispute the level of the insufficiency. The sole question, then, is whether appellees' insufficient report nonetheless implicates Dr. Ezekiel's conduct as required by *Scoresby*. We conclude that taking Dr. Gottesman's report as a whole, Dr. Ezekiel's conduct in the attending care provided to Ms. Shorts is implicated and criticized. She failed to order an emergency cesarean section between 6:45 a.m. and 7:45 a.m.—conduct that is dependent upon Dr. Ezekiel having been promptly notified of the decelerations between 6:45 a.m. and 7:45 a.m. Therefore, Gottesman's report does not constitute "no report." *See Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 840 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("The Supreme Court has recognized that the *Scoresby* standard is minimal; therefore, most purported expert reports are likely to fall into the deficient-report category and be eligible for a thirty-day extension under section 74.351(c).").

---

[4] Emphasis added.

### III. CONCLUSION

Appellees requested a thirty-day extension pursuant to section 74.351(c). The trial court denied Dr. Ezekiel's motion to dismiss, but did not rule on appellees' request for a thirty-day extension. Having concluded that Dr. Gottesman's report, served within the statutory deadline, contains the opinion of an individual with expertise that appellees' claim has merit and implicates Dr. Ezekiel's conduct, we reject Dr. Ezekiel's request that we reverse the trial court's order and dismiss appellees' claims against her. Instead, we sustain Dr. Ezekiel's issue only to the extent that she challenges the adequacy of Dr. Gottesman's report as to her.

Accordingly, we reverse the trial court's order denying Dr. Ezekiel's motion to dismiss and remand to the trial court for further proceedings, including the determination of whether to grant appellees a thirty-day extension to cure the deficiencies in Dr. Gottesman's report. *See St. Luke's Sugar Land Hosp. v. Joseph*, No. 14-11-00932-CV, 2012 WL 2860687, at *8 (Tex. App.—Houston [14th Dist.] July 12, 2012, no pet.) (mem. op.).


/s/     Sharon McCally
        Justice

Panel consists of Justices Boyce, McCally, and Mirabal.[5]

---

[5] Senior Justice Margaret Garner Mirabal sitting by assignment.