**Reversed and Rendered in Part and Reversed and Remanded in part and Memorandum Opinion filed November 7, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00158-CV

---

## MAHA KHALIFA AL-LAHIQ, M.D., Appellant

## V.

## ULYSSES L. ROSEMOND, Appellee

---

### On Appeal from the 133rd District Court
### Harris County, Texas
### Trial Court Cause No. 2007-63425

---

## M E M O R A N D U M   O P I N I O N

Appellant Maha Khalifa Al-Lahiq, M.D. appeals the trial court's denial of a motion to dismiss a medical malpractice action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2013). Dr. Al-Lahiq contends that the expert report served by appellee Ulysses L. Rosemond was insufficient. We reverse the trial court's order denying dismissal and render judgment dismissing Rosemond's claims against Dr. Al-Lahiq with prejudice.

## Background

Rosemond was admitted to Memorial Hermann Hospital on August 2, 2005, with symptoms of severe abdominal pain and fever. Rosemond was hospitalized at Memorial Hermann Hospital from August 2, 2005 to September 7, 2005. During this time, Dr. Al-Lahiq was Rosemond's attending physician. Rosemond was discharged from the hospital and transferred to a nursing home on September 7, 2005.

During his hospitalization, Rosemond was treated for sepsis, multi-organ failure, and renal insufficiency. Rosemond alleges that he was immobile during his hospitalization. Rosemond further asserts he developed severe contractures due to his immobilization coupled with Dr. Al-Lahiq's failure to order range-of-motion therapy. Upon discharge from Memorial Hermann Hospital, Rosemond was assessed as being very weak and in need of extensive rehabilitation; he was not assessed as suffering from contractures. At the nursing home, Rosemond was provided physical therapy services. Rosemond was transferred from the nursing home to the emergency room at Southeast Hermann Hospital on September 19, 2005. More than two years later, on January 17, 2008, Rosemond was first diagnosed as suffering from severe contractures.

Rosemond filed health care liability claims against Memorial Hermann Hospital System and Dr. Al-Lahiq on October 11, 2007. Rosemond later nonsuited his claims against the hospital. In an attempt to comply with Texas Civil Practice and Remedies Code section 74.351, Rosemond filed an expert report by Dr. Katz on February 6, 2008. Dr. Al-Lahiq moved to dismiss the suit based on Rosemond's alleged failure to serve an expert report or curriculum vitae on Dr. Al-Lahiq within 120 days of filing suit. In addition, Dr. Al-Lahiq moved to dismiss based on the insufficiency of Dr. Katz's expert report. The trial court sustained

2

appellant's objections and dismissed with prejudice Rosemond's claim against Dr. Al-Lahiq.

Rosemond appealed to this court, which concluded that the trial court had dismissed Rosemond's claim based upon both the objection to the sufficiency of the report and upon Dr. Al-Lahiq's contention that Dr. Katz's report was not timely served. *See Rosemond v. Al-Lahiq*, 331 S.W.3d 775, 777-780 (Tex. App.—Houston [14th Dist.] 2009), *rev'd*, 331 S.W.3d 764 (Tex. 2011) (per curiam). This court affirmed the trial court's order based solely upon the timeliness issue. *Id.* at 781.

After granting review, the Texas Supreme Court concluded that the trial court did not dismiss Rosemond's claim based upon Dr. Al-Lahiq's assertion that Dr. Katz's report was not timely served. *See Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 765-68 (Tex. 2011) (per curiam). Accordingly, the supreme court reversed and remanded the case to this court to review the report's adequacy under section 74.351. *Id.* at 768. Upon remand from the supreme court, this court held that the trial court did not abuse its discretion in determining that the expert report was deficient; however, this court held that the trial court abused its discretion by denying Rosemond's request for a 30-day extension under section 74.351(c). *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). This court remanded to the trial court. *Id.*

Rosemond filed a supplemental report by Dr. Katz in the trial court on December 21, 2012. Dr. Al-Lahiq objected to the revised report and moved to dismiss under section 74.531. The trial court denied Dr. Al-Lahiq's motion by order dated January 29, 2013. This interlocutory appeal followed.[1]

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon Supp. 2013).

3

**Analysis**

In two issues on appeal, Dr. Al-Lahiq contends that the trial court abused its discretion in overruling her objection to Dr. Katz's December 21, 2012 report and denying her motion to dismiss the medical malpractice claim. First, Dr. Al-Lahiq claims that the report is deficient because it is conclusory with regard to standard of care and causation. Second, Dr. Al-Lahiq argues that the report is insufficient because it fails to identify or articulate an experiential or educational basis for Dr. Katz's proposed standard of care.

## I. Standard of Review

We review a trial court's ruling regarding the adequacy of an expert report for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or without reference to guiding rules or principles. *Larson v. Dowing*, 197 S.W.3d 303, 304-05 (Tex. 2006) (per curiam). Under this standard, an appellate court may not substitute its own judgment for the trial court's judgment. *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st] 2006, no pet.) (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992)).

## II. Sufficiency of the Expert Report

### A. Expert Reports Must Address Specific Elements

An expert report must fairly summarize the expert's opinions regarding three elements: (1) the applicable standards of care; (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. In addition, an expert

4

report must be sufficiently detailed to fulfill two purposes: (1) inform the defendant of the specific conduct that the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Palacios,* 46 S.W.3d at 875.

The trial court must grant a motion challenging the adequacy of an expert report if it appears that the report does not represent an objective good faith effort to comply with the statutory definition of an expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l). A report that does not fairly summarize the three elements or provide enough information to fulfill the two purposes above is not considered a good faith effort to comply with the statute. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011). When determining whether an objective good faith effort has been made, the trial court is limited to the four corners of the report and cannot consider extrinsic evidence. *Palacios*, 46 S.W.3d at 878.

**B.    The Revised Report Fails to Adequately Address Causation**

We begin our analysis by addressing whether Dr. Katz's December 21, 2012 expert report adequately addressed causation because this determination is dispositive of Dr. Al-Lahiq's remaining issues. Dr. Al-Lahiq contends that Dr. Katz's report is insufficient because it is conclusory with regard to causation. Specifically, Dr. Al-Lahiq asserts that the expert report fails to explain how a diagnosis of contractures made 28 months after Rosemond was discharged from Memorial Hermann Hospital emanated from her care.

No magic words are required to establish the necessary causal link between a defendant's alleged negligence and harm suffered by a plaintiff. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) (per curiam). However, "an expert cannot simply opine that the breach caused the injury." *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). "Instead, the expert must go further and

explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Id.* at 539-40. In other words, an expert report must demonstrate causation beyond mere conjecture. *See Wright*, 79 S.W3d at 52.

Dr. Katz begins his discussion of Rosemond's medical treatment by summarizing a note attributed to Dr. Ahmad entered on August 3, 2005. Specifically, the note indicates that Rosemond was admitted to the hospital on August 2, 2005, with symptoms of abdominal pain and fever. Rosemond's condition worsened overnight and he was transferred to an intensive care unit. According to this same section of the report, Rosemond was subjected to a number of evaluations including a pulmonary consultation by Dr. Patel, a urology consultation by Dr. Dow, and a surgical consultation by Dr. Garza.

The second portion of Dr. Katz's summary of Rosemond's medical treatment contains an operative report by Dr. Garza dated August 4, 2005. The note details an exploratory surgery performed on Rosemond's abdomen. The next section of the summary describes a consultation report note authored by Dr. Dow recommending antibiotics, continued renal evaluation, and an MRI.

Next, Dr. Katz summarizes a note by Dr. Al-Lahiq written on the day Rosemond was discharged from the hospital. The note details Rosemond's condition while under Dr. Al-Lahiq's care. The note also discusses Rosemond's rehabilitation while hospitalized as follows:

> [Rosemond] was transferred to the floor and put on nasogastric feeding as tolerated. He became more alert and was able to verbalize pain. He was started on rehabilitation with very slow progression but willingness on Mr. Rosemond's part to participate. When Mr. Rosemond became stable enough it was agreed to put him in a nursing home for rehabilitation and to continue his medical care. He was transferred in a fairly stable condition still not tolerating PO intake very well but was very weak and needed extensive work with

6

rehabilitation.

In the next section of the summary, Dr. Katz discusses an admission record and notes from Courtyard Convalescence Center. Rosemond was admitted to Courtyard Convalescence on September 7, 2005. While at Courtyard Convalescence Center, Rosemond was noted as experiencing "moderate leg pain" and "worsening generalized debility aggravated by patient noncompliance." Finally, in the last section of his summary of the medical records, Dr. Katz describes a letter from Dr. Gugenheim dated January 17, 2008, 28 months after Rosemond was discharged from Dr. Al-Lahiq's care. In this letter, Dr. Gugenheim states that Rosemond suffers from severe joint contractures. This is the first and only mention of contractures in Dr. Katz's entire summary of Rosemond's medical records.

In a section entitled "Expert Opinion," Dr. Katz attempts to provide a causal explanation linking Dr. Al-Lahiq's treatment with Rosemond's contractures. However, like the first report, the December 21, 2012 report is impermissibly conclusory with respect to causation. The report states as follows:

> Ulysses Rosemond was admitted to Memorial Herman[n] Southeast and ultimately diagnosed with septicemia. He was bedridden for over a month. Dr. Maha Al-Lahiq was his attending physician and, as such, was responsible for participating in, overseeing and coordinating Rosemond's overall care while he was at Memorial Hermann. Rosemond's medical records reflect that Dr. Al-Lahiq was well aware that Ulysses Rosemond was bedridden and immobile. Given his condition, the standard of care for treating Rosemond required that Dr. Maha Al-Lahiq (1) recognize that Rosemond's condition put him at great risk to develop contractures; (2) develop a treatment plan from the first day he was admitted to prevent the onset of contractures[;] and (3) at the very minimum, initiate a treatment plan that includes full range of motion exercises to each of his joints, at least once daily.

> *            *            *

7

To a reasonable degree of medical certainty, [Rosemond's] contractures were already developing before he was transferred from Memorial Hermann Hospital to the nursing care facility. Use of ROM exercises is highly effective to prevent the onset of contractures. To a reasonable degree of medical probability, Ulysses Rosemond would not have developed the contractures to the extent he now suffers, if Dr. Al-Lahiq had not deviated from the acceptable medical standard of care and had ordered ROM exercises from the beginning of his treatment.

Limiting our analysis to the four corners of the report, we hold that this report fails to demonstrate causation beyond mere conjecture. The first mention of contractures in Dr. Katz's summary of the medical records is in Dr. Gugenheim's letter dated January 17, 2008 — 28 months after Rosemond was discharged from Dr. Al-Lahiq's care. Contractures are not mentioned in the remainder of Dr. Katz's summary of the medical records.

The First Court of Appeals has decided a similar case in which the expert report was deficient with respect to causation. *See Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855 (Tex. App.—Houston [1st Dist.] 2006, no pet.). In *Gray*, a patient alleged that her left knee was injured by the flexing of her leg during nasal surgery, and that the injury could have been prevented had the doctor and nurses properly monitored her extremities during the operation. *Id.* at 856-57. The expert report in *Gray* provided the following causal analysis: "The failure to monitor and detect the malpositioned left knee resulted in a dislocated left patella, severe pain and suffering, and subsequent medical treatment." *Id.* at 858. The court concluded that this statement was inadequate to address causation; the court stated that "by not fleshing out how appellee's failure to monitor Gray's extremities caused her injury, the report does not convincingly tie the alleged departure from the standard of care to specific facts of the case." *Id.* at 860 (citing *Bowie Mem'l Hosp.*, 79 S.W.3d at 53).

8

The the December 21, 2012 report's causal analysis is similarly deficient. First, the report fails to point out any facts that support Dr. Katz's assertion that Rosemond suffered from contractures upon discharge from Dr. Al-Lahiq's care. Instead, the report provides only the conclusory statement that "[t]o a reasonable degree of medical certainty, [Rosemond's] contractures were already developing before he was transferred from Memorial Hermann Hospital to the nursing care facility."

Second, the report does not state with any specificity how Dr. Al-Lahiq's alleged failure to order range of motion therapy during Rosemond's hospitalization from August 2, 2005 to September 7, 2005 affected his ultimate diagnosis on January 17, 2008. Instead, Dr. Katz provides only the conclusory statement that "[t]o a reasonable degree of medical probability, Ulysses Rosemond would not have developed the contractures to the extent he now suffers, if Dr. Al-Lahiq had not deviated from the acceptable medical standard of care and had ordered ROM exercises from the beginning of his treatment." This statement fails to address the chain of events that ultimately led to Rosemond's 2008 diagnosis. Specifically, the report does not detail the significance of the first six weeks of immobility to the development of contractures. Further, the report fails to explain the impact Rosemond's multiple medical problems had on the development and treatment of his contractures. *See Talmore v. Baptist Hosps of Se. Tex.*, No. 09-06-024-CV, 2006 WL 2883124, at *4 (Tex. App.—Beaumont Oct. 12, 2006, no pet.) (report insufficient because it failed to address how patient's multiple medical problems impacted the development and treatment of her bedsores). Consequently, we conclude that this report fails to provide a causal link between Dr. Al-Lahiq's care and Rosemond's contractures. *See Palacios*, 46 S.W.3d at 878.

9

Because Dr. Katz's expert report is impermissibly conclusory, we hold that the trial court abused its discretion to the extent that it found the report provided a sufficient causal analysis. In light of our disposition of the issue, we need not address Dr. Al-Lahiq's remaining issues.

## Conclusion

We reverse the trial court's order, render judgment dismissing Rosemond's claims against Dr. Al-Lahiq with prejudice, and remand to the trial court for determination of reasonable attorney's fees and court costs. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b).


/s/    William J. Boyce
       Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison.