**Affirmed and Memorandum Opinion filed January 13, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00004-CV

## NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY, LTD., D/B/A NORTH CYPRESS MEDICAL CENTER AND DR. OZOCHUKWU ODILI, Appellants

**V.**

## RANDY WHITE, Appellee

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2019-14054**

## MEMORANDUM OPINION

In this interlocutory appeal, appellants Ozochukwu Odili, M.D., ("Dr. Odili") and North Cypress Medical Center Operating Company, Ltd. D/B/A North Cypress Medical Center ("Hospital") appeal the denial of their motions to dismiss the health-care liability claims of appellee Randy White. In three issues, Dr. Odili argues the trial court erred when it allowed White to amend his expert report and denied his motion to dismiss. In two issues, the Hospital argues that the trial court

erred when it overruled its objections to White's expert report and denied its motion to dismiss and that the appropriate remedy, after White was permitted to amend his expert report once, is rendition of judgment and remand for the assessment of attorney's fees and costs. We affirm.

## I. BACKGROUND

On March 11, 2017, White was admitted to the emergency department of the Hospital after a toolbox fell on his hand. White was diagnosed with a six-centimeter laceration to his thumb and an open intra-articular distal phalanx fracture with extension into the proximal phalanx of the thumb. Dr. Odili, an emergency room physician, treated White for his injury at the Hospital and, on that same day, referred White for an orthopedic consultation on March 13, 2017. On March 13, 2017, White sought treatment with a different orthopedic surgeon and was scheduled for surgery on March 16, 2017. During surgery, it was discovered that White's wound was infected. The surgery was aborted, and an incision and drainage procedure was performed. White underwent two subsequent incision and drainage procedures on March 30, 2017, and April 2, 2017.

On February 25, 2019, White sued Dr. Odili and the Hospital for negligence in the treatment of his injury. In his live petition, White alleges that the proper standard of care for his injury required Dr. Odili to immediately send White for examination and care by a specialist in hand injuries, and that White should have been rushed to surgery. White alleged that as a result of the delay in treatment, he suffered multiple complications and expenses, permanent injury to his thumb, and an impairment rating of nine percent. White alleged that Dr. Odili and the Hospital were negligent by failing to refer White to a hand specialist immediately for examination and care of White's hand; by failing to refer White to emergency surgery immediately or within twenty-four hours; and in White's follow up care.

2

White further alleged that Dr. Odili and the Hospital were grossly negligent, and that the Hospital was, under various theories, vicariously liable for Dr. Odili's negligence.

On March 21, 2019, White served Dr. Odili with an expert report authored by Ramesh Srinivasan, M.D., ("Dr. Srinivasan"), a board-certified orthopedic surgeon. On May 6, 2019, White served the Hospital with Dr. Srinivasan's expert report.[1]

Dr. Odili and the Hospital each filed timely objections to Dr. Srinivasan's expert report on April 8, 2019, and May 24, 2019, respectively. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (providing that a party must object to a plaintiff's expert report within twenty-one days). Dr. Odili objected to the report on the basis that Dr. Srinivasan was not qualified to opine on Dr. Odili's standard of care or breach of the standard of care because Dr. Srinivasan's letter and CV do not reflect education, training, or experience as an emergency room physician, and that Dr. Srinivasan's experience as an orthopedic surgeon does not "overlap" with the discipline of emergency medicine. Dr. Odili further objected to the report, averring that the report did not meet the statutory requirements regarding the standard of care, breach of the standard of care, and causation. Dr. Odili further argued that the report advanced by White was not a deficient report under the statute, but rather it was not an expert report at all under the statute. The Hospital objected to the expert report on the basis that it did not address the standard of care applicable to nursing staff or the Hospital, breach of the standard of care by the Hospital, and causation as to the Hospital.

---

[1] The Hospital states in its brief that it was served with the original expert report on July 10, 2019; however, this date is incorrect because the Hospital filed its objections to the original expert report on May 24, 2019. In its objections filed in the trial court, the Hospital states that it was served with the expert report on May 6, 2019.

On July 30, 2019, Dr. Odili filed a motion to dismiss White's claims on the basis that Dr. Srinivasan's report was not an expert report under the statute and was incapable of cure. *See id.* § 74.351(b)(2) (providing that if an expert report has not been served within the statutory 120-day period as to a defendant physician or health care provider, the court then, on the motion of the affected physician or healthcare provider, shall enter an order that dismisses the claim with prejudice with respect to the physician or health care provider); *see also id.* § 74.351(a) (providing that claimant in health care liability claim must serve on the defendant one or more expert reports within 120 days after the date each defendant's answer is filed). On September 23, 2019, the trial court sustained Dr. Odili's objections in part, granted White thirty days to file an amended expert report, and informed Dr. Odili that it would consider his motion to dismiss after an amended report was filed. *See id.* § 74.351(c) ("If an expert report has not been served within the period specified by [§ 74.351(a)] because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency.").

On October 22, 2019, White served appellants with Dr. Srinivasan's amended expert report. On November 1, 2019, the Hospital objected to Dr. Srinivasan's amended report and filed its own motion to dismiss. Specifically, the Hospital argued that the amended expert report failed to address the standard of care, breach of the standard of care, and causation as to the Hospital and failed to provide any factual basis for Dr. Srinivasan's conclusion that the Hospital did not have hand-fellowship trained surgeons on staff.

On November 6, 2019, Dr. Odili filed his objections to the amended expert report and a second motion to dismiss. Dr. Odili objected to the amended report on the grounds that (1) Dr. Srinivasan was not qualified to opine on Dr. Odili's

4

standard of care or breach of the standard of care, and (2) the amended report had "no opinions on proximate cause other than the statement that there was causation." Dr. Odili also argued that Dr. Srinivasan's "amended 'report' does not qualify as an expert report" and that White's suit should be dismissed for failing to comply with the statutory requirements.

On December 16, 2019, following a hearing, the trial court signed an order denying Dr. Odili and the Hospital's objections to Dr. Srinivasan's expert report and their motions to dismiss. This interlocutory appeal followed. *See id.* § 51.014(a)(9) (authorizing interlocutory appeal of the denial of a motion to dismiss filed pursuant to Texas Civil Practice and Remedies Code § 74.351(b)).

## II.    DISCUSSION

### A.    APPLICABLE LAW

The Texas Medical Liability Act ("TMLA") is codified in Chapter 74 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–74.507. Section 74.351 provides that a plaintiff in a health care liability suit must serve the medical defendant with a statutorily-compliant expert report accompanied by the expert's curriculum vitae ("CV"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. If a plaintiff fails to do so within 120 days after the defendant's original answer is filed, then the trial court must dismiss the claim with prejudice on the defendant's motion. *Baty v. Futrell*, 543 S.W.3d 689, 692 n.1 (Tex. 2018); *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b)(2).

The goal is "to deter frivolous lawsuits by requiring a claimant early in litigation to produce the opinion of a suitable expert that his claim has merit." *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017) (citing *Scoresby v. Santillan*, 346 S.W.3d 546, 552 (Tex. 2011)); *see also*

*Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam). Therefore, an expert report is a low threshold a person bringing a claim against a health care provider must cross merely to show that his claim is not frivolous. *Loaisiga v. Cerda*, 379 S.W.3d 248, 264 (Tex. 2012).

An "expert report" under the TMLA means:

a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6).

"A trial court must sustain a challenge to a report's adequacy if the report does not represent an objective good faith effort to provide a fair summary of the applicable standard of care, the defendant's breach of that standard, and how that breach caused the patient's harm." *Miller v. JSC Lake Highland Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017) (per curiam) (internal quotation marks omitted); *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*), (r)(6). "A good-faith effort must 'provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide the basis for the trial court to conclude that the claims have merit." *Miller*, 536 S.W.3d at 513 (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam)). All information needed for this inquiry is found within the four corners of the expert report, which need not marshal all of the plaintiff's proof. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (citing *Am. Transitional Ctrs. of Tex., Inc v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)). A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. *Palacios*, 46 S.W.3d at

6

879; *New Med. Horizons, II, Ltd. v. Milner*, 575 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see Scoresby*, 346 S.W.3d at 556 ("No particular words or formality are required, but bare conclusions will not suffice.").

A plaintiff is required to timely file an adequate expert report as to each defendant in a health care liability claim, but the plaintiff is not required to file an expert report as to each liability theory alleged against that defendant. *See TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013); *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 632 (Tex. 2013).

## B. STANDARD OF REVIEW

We review a trial court's ruling on the sufficiency of an expert's report and on a motion to dismiss under the expert-report rule for an abuse of discretion. *Jelinek*, 328 S.W.3d at 539; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *Miller*, 536 S.W.3d at 512. Likewise, we review a trial court's determination that an expert is qualified under an abuse of discretion standard. *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 833 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006) (per curiam). A court abuses its discretion if it acts in an arbitrary or unreasonable manner and without reference to any guiding rules or principles. *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 (Tex. 2017).

## C. DR. ODILI'S APPEAL

### 1. Dr. Srinivasan's Original Expert Report

In his first issue, Dr. Odili argues that Dr. Srinivasan's original report was not an "expert report" as required by the TMLA. Specifically, Dr. Odili argues that Dr. Srinivasan was not qualified to opine on the relevant standard of care and that the original report did not set out the standard of care, the breach of the standard of

7

care, or causation. As a result, Dr. Odili argues, Dr. Srinivasan's original report was "no report"—i.e., not a deficient report—and White failed to comply with the statutory requirement that an expert-report be served on the medical defendant within 120 days of their answer.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b)(2). Thus, Dr. Odili argues, the trial court was required to dismiss White's claims for failure to comply with the TMLA's expert-report requirement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (a), (b)(2), (r)(6); *see also CHCA Clear Lake, L.P. v. Stewart*, No. 01-19-00874-CV, 2021 WL 3412461, at \*13 (Tex. App.—Houston [1st Dist.] Aug. 5, 2021, no pet.) (mem. op.) ("An expert report by a person not qualified to testify does not constitute a good-faith effort to comply with the TMLA's definition of an expert report and warrants dismissal.").

An expert report must at a minimum (1) be timely served, (2) contain the opinion of a qualified expert, and (3) implicate the defendant's conduct. *Scoresby*, 346 S.W.3d at 557. Here, Dr. Odili filed his answer to White's suit on March 12, 2019, and White timely served Dr. Srinivsan's original expert report on Dr. Odili within 120 days of Dr. Odili's answer on March 21, 2019. However, Dr. Odili argues that Dr. Srinivisan, an orthopedic surgeon, was not qualified to opine on the standard of care owed by Dr. Odili, an emergency room physician. *See id.*

In a health-care liability suit, a person may qualify as an expert witness on the issue of whether the physician departed from the accepted standards of medical care only if the person is a physician who: (1) is practicing medicine at the time testimony was given or when the claim arose; (2) has knowledge of the accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or

---

[2] Dr. Odili filed his answer to White's suit on March 12, 2019. White served appellants with Dr. Srinivasan's amended expert report over 120 days later on October 22, 2019. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b)(2).

experience to offer an expert opinion regarding those accepted standards of medical care. *Rosemond*, 362 S.W.3d at 834 (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 74.401(a), 74.351(r)(5)(A)). Dr. Odili contends that Dr. Srinivasan is not qualified to render an expert opinion regarding the claims against Dr. Odili because Dr. Srinivasan was not actively practicing emergency medicine at the time the claim arose or at the time of his report.

"To clarify the required qualifications, an expert must show the 'accepted standards of medical care for the diagnosis, care, or treatment *of the illness, injury, or condition* involved in the claim.'" *Mem'l Hermann Health Sys. v. Heinzen*, 584 S.W.3d 902, 916 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(2)) (emphasis in original). "By its plain language, the statute does not focus on the defendant doctor's area of expertise, but on the condition involved in the claim." *Id.*; *see Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

The "illness, injury, or condition" involved in White's claim is an open intra-articular distal phalanx fracture with extension into the proximal phalanx of the thumb. Thus, to offer an expert opinion, Dr. Srinivasan must be qualified on the basis of training and experience to offer an expert opinion regarding the accepted standards of medical care and diagnosis, care, or treatment of an open intra-articular distal phalanx fracture with extension into the proximal phalanx of the thumb. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(2); *Heinzen*, 584 S.W.3d at 916–17. And to determine whether Dr. Srinivasan is qualified on the basis of training or experience to offer an expert opinion on the standards of care for the diagnosis, care, or treatment of White's injury, the trial court was required to considered whether, at the time the claim arose or at the time he authored the report, Dr. Srinivasan had substantial training and experience in "an area of

9

medical practice relevant to the claim" and was actively practicing medicine in rendering medical services "relevant to the claim."

Dr. Srinivasan is a board-certified orthopedic surgeon, and Dr. Odili does not dispute that Dr. Srinivasan is qualified to address the accepted standards of medical care for the diagnosis, care, and treatment, of the injury suffered by White; instead, Dr. Odili contends that Dr. Srinivasan failed to show any experience, training, or education in emergency medicine.

Dr. Srinivasan's original expert report did not provide any commentary on his qualifications, but his attached CV provided that: (1) he has been working for the preceding seven years as a staff hand, upper extremity, and microvascular surgeon and as the associate fellowship director for the hand and upper extremity fellowship at The Hand Center of San Antonio; (2) before his most recent employment, he taught for six years at the Department of Orthopedic Surgery at the University of Texas in San Antonio; (3) he is board certified by the American Board of Orthopedic Surgery and has Hand Certificate of Added Qualification; and (4) he completed his medical residency in orthopedic surgery followed by a hand, upper extremity, and microvascular surgery fellowship. *See Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 758 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[O]ur analysis of the qualifications of an expert report under section 74.351 is limited to the four corners of the expert's report and curriculum vitae.").

Given Dr. Srinivasan's CV, we cannot conclude that the trial court abused its discretion in finding Dr. Srinivasan qualified to render an expert opinion concerning White's claims against Dr. Odili. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(2); *Heinzen*, 584 S.W.3d at 916–17 (concluding that board certified ophthalmologist was qualified to render an expert opinion concerning

10

emergency room physician's treatment of acute angle-closure glaucoma); *see also Roberts v. Williamson*, 111 S.W.3d 113, 121–22 (Tex. 2003) (concluding that pediatrician had experience and expertise regarding the specific causes and effects of plaintiff's injuries and could therefore provide expert testimony in suit against neurologist). Furthermore, we conclude that Dr. Srinivasan's original expert report implicated Dr. Odili's conduct. *See Scoresby*, 346 S.W.3d at 557. Specifically, Dr. Srinivasan's original expert report provided that "White was seen in the Emergency Department at North Cypress Medical Records [sic]" and "was evaluated by Dr. Odili," and the report is directed at the "initial care" White received at the Hospital. Thus, we conclude that Dr. Srinivasan's original report was an expert report under the TMLA. *See id.*

To the extent that Dr. Odili argues that inadequacies in the standard of care, breach of the standard of care, and causation in the original expert report rendered it "no report," we note that these objections go to the adequacy of an expert report under the statute. *See Ogletree v. Matthews*, 262 S.W.3d 316, 322 (Tex. 2007). Here, Dr. Srinivasan's original report was timely served, contained the opinions of a qualified expert, and implicated Dr. Odili's conduct. *See Scoresby*, 346 S.W.3d at 557. Thus, we reject Dr. Odili's argument that the original report was not a report under the TMLA and overrule his first issue.

### 2. Opportunity to Amend Dr. Srinivasan's Original Expert Report

In its second issue, Dr. Odili argues that the trial court abused its discretion when it granted White an extension to cure any deficiencies in Dr. Srinivasan's original expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

The TMLA does not require dismissal of deficient but curable reports. *Ogletree*, 262 S.W.3d at 320. "[A] 30-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it

contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Scoresby*, 346 S.W.3d at 557; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). Furthermore, the decision to grant a thirty-day extension is not appealable. *Ogletree*, 262 S.W.3d at 319; *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (providing that an appeal may not be taken from an order granting an extension under § 74.351). Therefore, we conclude that we lack jurisdiction to review the trial court's order granting White thirty days to amend any deficiencies in Dr. Srinivasan's original expert repot. We overrule Dr. Odili's second issue.

### 3. Dr. Srinivasan's Amended Expert Report

In his third issue, Dr. Odili argues that the trial court abused its discretion when it denied his motion to dismiss White's lawsuit following Dr. Srinivasan's amended expert report because the amended report fails to meet the statutory requirements.[3] Specifically, Dr. Odili argues the trial court should have granted his motion because the amended expert report fails to establish causation. Dr. Odili concedes that the amended report provides the applicable standard of care and the breach of that standard of care.

#### a. *Proximate Causation*

The causal relationship required in a healthcare-liability claim is proximate causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (defining "health care liability claim" as a cause of action for physician's or healthcare provider's breach of the standard of care "which proximately results in injury to or death of a claimant"). Proximate cause has two components: (1) foreseeability and

---

[3] Dr. Odili also argues that his motion to dismiss based on the amended report should have been granted because Dr. Srinivasan was not qualified to opine on the standard of care and breach of the standard of care. Because we have previously concluded that the trial court did not abuse its discretion in finding Dr. Srinivasan qualified, we reject this argument.

(2) cause-in-fact. *Id.* Accordingly, an expert report under the TMLA must explain both foreseeability and cause-in-fact. *See Miller*, 536 S.W.3d at 515 (citing *Zamarripa*, 526 S.W.3d at 460). A healthcare provider's breach was a foreseeable cause of the plaintiff's injury if a healthcare provider of ordinary intelligence would have anticipated the danger caused by the negligent act or omission. *See Price v. Divita*, 224 S.W.3d 331, 336 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)). For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not have occurred. *Zamarripa*, 526 S.W.3d at 460.

Although the report need not use "proximate cause," "foreseeability," or "cause in fact" to satisfy the TMLA's requirements and show how and why a breach of the standard of care caused injury, the expert report must make a good-faith effort to explain, factually, how proximate cause will be proven. *Id.* Without factual explanations, a report amounts to "nothing more than the ipse dixit of the experts" and is "clearly insufficient." *Id.* at 461; *see, e.g.*, *Jelinek*, 328 S.W.3d at 540. An expert report may not have an analytical gap or missing link between the expert's allegation that the healthcare provider defendant breached the standard of care and the plaintiff's injuries. *See Wright,* 79 S.W.3d at 53; *see, e.g.*, *Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 23–26 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (concluding that expert's "opinion on causation contains analytical gaps and missing links which render his opinion conclusory"). To determine whether the expert's causation conclusion is detailed enough, we read the expert's conclusion on causation in the context of the entire report, not piecemeal or in a vacuum. *Harvey v. Kindred Healthcare Operating, Inc.*, 578

S.W.3d 638, 653 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Here, Dr. Srinivasan stated in his amended report that he reviewed Dr. Odili's preoperative notes and the operative and postoperative reports by Mark Ciagla, M.D., from the surgery performed on White's hand. He further stated:

> On March[] 11[,] 2017, Mr. Randy White was seen in the Emergency department at North Cypress. According to the medical records, he was evaluated by Dr. Uzochukwu [Odili], an Emergency Medicine Physician. Physical examination was notable for 6cm skin laceration, normal functioning tendons, normal vascularity and x-rays indicative of an open intra-articular distal phalanx fracture with extension into the proximal phalanx of the thumb. Medical records state that Dr. [Odili] treated Mr. White's injuries with irrigation, suturing[,] and scheduled follow-up with Dr. Tanous (an orthopedic surgeon) on Monday, 3/13/2017.
>
> Mr. White saw Dr. Ciagla (an Orthopedic surgeon) on 3/13/2017 who recommended surgery including ORIF. Surgery was performed March 16, 2017 (5 days after initial injury). Intraoperative findings were notable for copious pus which caused Dr. Ciagla to abort the case after incision and drainage. Picc line was placed and IV antibiotics were started.
>
> On 3/30/2017, repeat 1+D was performed by Dr. Ciagla. Minimal purulence was noted but no fixation was placed.
>
> On 4/2/2017, Dr. Ciagla performed the 3rd incision and drainage without fixation placed.
>
> On 4/17/2017, Dr. Ciagla saw Mr. White, 18 days postop. Plan was for CT scan at 8 weeks postop.
>
> No other relevant records are available for my review such as copy of xrays or CT scan or OT notes indicating the patient's final range of motion, stability, or strength. However, he did receive an impairment rating of 9%.
>
> The standard of care in an ER setting for an injury such as Mr. White's (grade 2 open intraarticular thumb fracture involving the distal and proximal phalanx) is immediate consultation with a hand-fellowship trained surgeon. There was a breach in the standard of care by Dr. [Odili] for not immediately consulting a hand-fellowship trained

surgeon or North Cypress for not having hand[-]fellowship trained surgeons available to Dr. [Odili] for consultation.

Open fractures of this type are taken to the operating room within 24 hours of initial evaluation for treatment to avoid risk of infection and subsequent nonunion, malunion, hardware failure, stiffness pain, arthritis, and loss of strength. Alternatively, if the wound is grossly clean and irrigated with 1L of Normal Saline it can be referred in delayed fashion to a hand fellowship trained surgeon after consultation.[] The medical reasons I have reviewed do not indicate a medical reason that Mr. White's case could not have been reviewed with a hand fellowship trained surgeon. Instead, Mr. White was referred to a non hand fellowship-trained surgeon. In all medical probability, Mr. White would not have ended up with an infection and subsequent impairment if Dr. [Odili] had obtained a grossly clean wound or provided immediate referral for surgery to a hand-fellowship trained surgeon.

Concerning foreseeability, Dr. Srinivasan's report provides that patients with White's injury are taken to the operating room within twenty-four hours of initial evaluation for treatment to avoid infection and other complications. *See Abshire*, 563 S.W.3d at 223–25; *Miller*, 536 S.W.3d at 515. As to cause-in-fact, Dr. Srinivasan opined that White would not have ended up with an infection and subsequent impairment if White had been immediately referred for surgery to a hand-fellowship trained surgeon. *See Zamarripa*, 526 S.W.3d at 460.

Dr. Srinivasan's amended report provides how and why the alleged negligence—i.e., Dr. Odili's failure to immediately refer White for surgery to a hand-fellowship trained surgeon—caused White's complained of injury. *See Abshire*, 563 S.W.3d at 223–25; *Zamarripa*, 526 S.W.3d at 460. Dr. Srinivasan's report explains the basis of his conclusion, links his conclusion to the facts, and provides enough information to inform Dr. Odili of the specific conduct White has called into question and for the trial court to conclude that the claims have merit. *See Abshire*, 563 S.W.3d at 223–25; *Bowie Mem'l Hosp.*, 79 S.W.3d at 52;

15

*Palacios*, 46 S.W.3d at 897. After reviewing Dr. Srinivasan's amended report, we conclude that the trial court could have reasonably determined that the amended expert report represented a good-faith effort to summarize the causal relationship between Dr. Odili's failure to meet the applicable standard of care and White's injury. *See Abshire*, 563 S.W.3d at 223–25; *Harvey*, 578 S.W.3d at 653–54; *see also Gonzalez v. Padilla*, 485 S.W.3d 236, 252–53 (Tex. App.—El Paso 2016, no pet.) (holding expert report was adequate when expert opined that "the failure to timely establish an appropriate treatment plan which provided for infection prevention" caused patient to develop infection resulting in amputation of his leg).

We overrule Dr. Odili's third issue.

## D.    THE HOSPITAL'S APPEAL

In its first issue, the Hospital argues that the trial court abused its discretion in denying its objections to Dr. Srinivasan's amended expert report and its motion to dismiss. Specifically, the Hospital argues that the amended report failed to address the standard of care, breach of standard of care, and causation regarding White's direct liability claims against the Hospital.

Here, White asserted direct and vicarious liability claims against the Hospital. We note that the TMLA does not require an expert report as to each liability theory alleged against the defendant. *See, e.g.*, *TTHR Ltd. P'ship*, 401 S.W.3d at 44 ("[B]ecause the trial court did not abuse its discretion in finding Moreno's reports adequate as to her theory that [the hospital] is vicariously liable for the doctor's actions, her suit against [the hospital]—including her claims that the hospital has direct liability and vicarious liability for actions of the nurses— may proceed."); *Certified EMS, Inc.*, 392 S.W.3d at 632 ("[W]hen a healthcare liability claim involves a vicarious liability theory, either alone or in combination with other theories, an expert report that meets the statutory standards as to the

employee is sufficient to implicate the employer's conduct under the vicarious theory. And if any liability theory has been adequately covered, the entire case may proceed."). For vicarious liability claims, a report that adequately implicates the actions of that party's agents or employees is sufficient. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008) (per curiam); *see also Methodist Hosp. v. Addison*, 574 S.W.3d 490, 502 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Because we have determined that Dr. Cohen's report adequately addressed one theory of liability against Methodist, we need not address Methodist's remaining arguments . . . that the trial court abused its discretion when it denied Methodist's motion to dismiss."); *Hous. Methodist Hosp. v. Nguyen*, 470 S.W.3d 127, 130 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (concluding that expert report containing expert opinion as to claims against defendant physicians implicated the Hospital's conduct under plaintiff's pleaded theory of vicarious liability); *McAllen Hosps., L.P. v. Gonzalez*, 566 S.W.3d 451, 458 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) ("When a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, and there is an expert report sufficient to support that vicarious liability theory, the entire case may proceed past a motion to dismiss based on the expert report rule."). As previously concluded, Dr. Srinivasan's amended report adequately implicates the actions of Dr. Odili, a physician at the Hospital. Therefore, we cannot conclude that the trial court abused its discretion when it denied the Hospital's motion to dismiss.[4] *See TTHR Ltd. P'ship*, 401 S.W.3d at 44; *Certified EMS, Inc.*, 392 S.W.3d at 632.

Because we conclude that the trial court did not err when it denied the Hospital's motion to dismiss, we need not address its argument regarding its

---

[4] At oral argument before this court, the Hospital conceded that if the amended report was sufficient as to Dr. Odili, then it was sufficient as to the Hospital.

objections or its second issue. *See* Tex. R. App. 47.1.

We overrule the Hospital's two issues.

## III. CONCLUSION

Having overruled all of the issues on appeal, we affirm the trial court's order.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Poissant.